plainant wished to run to include an improvement he·claimed, which was within the lines of his pre-emption. He said he was present when William Montgomery, in company with the defendant and Samuel Craig, were making a survey, about three or four hundred yards from where the complainant lives, and that the complainant informed the defendant that he was surveying his pre-emption.

That the defendant answered, he verily believed that the complainant had once a right to a pre-emption of land there, but by his neglect had lost it, and believed he never would recover it.

BY THE COURT.—The complainant must recover of the defendant six hundred acres of land, as described on the connected plat by the letters G H I B C D, being the whole of the land in controversy, with costs, etc.

Defendant agreed to convey with a special warranty, etc.

---

## MARCH TERM, 1792.

### WILLIAM YOUNG v. WILLIAM McKEE.

*In Chancery.*

William Young, on the 2d day of February, 1780, obtained from the court of commissioners the following certificate, to-wit:

" William Young this day claimed a pre-emption of 400 acres of land, at the state price, in the district of Kentucky, on account of making an actual settlement, in the month of March, 1779, lying on the waters of Gilbert's creek, adjoining the lands of Nehemiah Poor on the west. Satisfactory proof being made to the court, they are of opinion that the said Young has a right to a pre-emption of 400 acres of land, to include the above location, and that a certificate issue accordingly."

And having, on the 29th day of April, in the year 1780, made the following entry with the county surveyor, to-wit:

"William Young enters 400 acres upon a pre-emption warrant, on the head of an east fork of Gilbert's creek, leading toward Herman's lick, including two springs."

On the 17th day of March, 1781, proceeded to survey the same, in manner described on the connected plat; but was prevented

by a caveat, entered by a certain Christopher Clark, from obtaining a patent until after the defendant had obtained his patent.

The defendant, on the 19th of May, in the year 1780, made the following entry with the county surveyor, on treasury warrant, to-wit:

"William McKee enters 500 acres upon a treasury warrant, on the head of an east fork of Gilbert's creek, which runs into said creek about three-quarters of a mile above Boughman's trace, near McDonald's pre-emption."

And having surveyed 470 acres of said 500 acre entry, in the manner described on the connected plat, obtained a patent of elder date than that of the complainant.

The complainant filed his bill in chancery, praying that the defendant might be compelled to convey so much of his claim as interfered with his, and for an injunction to stay proceedings on a judgment in ejectment, obtained by the defendant against him.

The annexed connected plat, No. 19, was returned in this cause, of which the following is an explanation:

A B C D, William Young's pre-emption, according to survey, containg 403 acres. A D C B E F G H, William McKee's entry of 470 acres, on treasury warrant of 500 acres. B I K L, a survey of 250

acres, made for Lewis Craig, March 30th, 1781, entered the 18th of May, 1780.   K I M N O P Q R, a survey of 500 acres, made for Philip Buckner the 4th of April, 1781, entered the 2d of April, 1781.   M S T U, Peter Woolley's settlement of 400 acres.   V W X Y, 475 acres of John Woolley's pre-emption, according to survey, as assignee of Peter.   *a b c d*, 525 acres, the residue of the said pre-emption.   P Q R K *e f*, William Young's, assignee of Poor, pre-emption of 400 acres. 1, the spring shown by Thomas Denton, Thomas Daniel, William McQuirry and Robert Lucky, who said that this spring was named by the Woolleys the Rock spring, and is the head of Young's branch.   2, the spring at which Proctor formerly had a black-smith's shop, and is said by James Gilmore to be the head of the aforesaid Young's branch.   3, the spring where William Young lives, shown by Mary McQuirry to be the place where he made his improvement in the fall of 1780; it being one of the springs shown by William Young, as called for in his entry.   4, is called the Gum spring, and was shown by the said William Young to be his other spring called for in his entry.   The dotted line represents Boffman's trace.   5 to 6, line of McDonald's pre-emption.   *h*, Harmon's lick.   From the spring at 1 to Harmon's lick is south 46 east, 1,288 poles.   The water course is Gilbert's creek.   7 to 8, the North fork.   1 to D, Young's branch.   9 to 10, the branch that heads at Wm. Lampton's.

The certificate of Nehemiah Poor, whose land is called for by William Young in his certificate, was granted by the commissioners, February 2d, 1780, and is in the following words, to-wit:

"Nehemiah Poor this day claimed a pre-emption of 400 acres of land, at the state price, in the district of Kentucky, on account of making an actual settlement in the year 1778, lying on the head of a branch of Gilbert's creek, that heads towards Harmon's lick. Satisfactory proof being made to the court, they are of opinion that the said Poor has a right to a pre-emption to include the said location, and that a certificate issue accordingly."

A pre-emption warrant having been obtained by virtue of the said certificate, and assigned to the complainant, he made the following entry thereon, on the 29th day of April, 1780, to-wit:

"William Young, assignee of Nehemiah Poor, enters 400 acres in Kentucky, by virtue of a pre-emption warrant, lying on the middle branch of Gilbert's creek, where Boone's trace crosses, including a branch of Paint lick creek, including three springs."

Dryden *v.* McGee.

The complainant failed to identify the land granted to him by the commissioners. Instead of proving where he had made an actual settlement, in March, 1779, he only proved by Mary McQuirry, the making some small improvement on the land in dispute, in the year 1780.

On the other hand, John Caldwell swore that Robert Kinkaid, in the year 1780, showed an improvement, which was about 2 miles from where the complainant lives, a north-eastwardly course, which he told him was the complainant's improvement. And that he afterward told the complainant that he had seen the said improvement, and the complainant told him it was his, and that he had worked one or two days on it.

William Whitley swore that the complainant and his family came to his station in April, 1779, and that he made corn there.

And Nathan Huston swore that he made corn at Whitley's station, in 1779, in partnership with the complainant.

The complainant did not attempt to prove where Nehemiah Poor's actual settlement had been made.

BY THE COURT.—The complainant has failed to show a sufficient title in equity, to preclude the defendant from proceeding against him at common law; therefore the injunction must be dissolved, and the bill dismissed with costs, etc.

---

## WILLIAM DRYDEN *v.* DAVID McGEE.

### *In Chancery.*

Bryan McDonald, on the 21st day of December, in the year 1779, obtained from the court of commissioners the following certificate for a settlement and pre-emption, to-wit:

"Bryan McDonald, by David McGee, this day claimed a settlement and pre-emption to a tract of land in the district of Kentucky, lying on the west fork of Howard's creek, a branch of Kentucky river, running up the said fork for quantity, by improving the same, and raising a crop of corn in the year 1776. Satisfactory proof being made to the court, they are of opinion that the said McDonald has a right to a settlement of 400 acres of land, to include the said improvement, and the pre-emption of 1,000 acres adjoining, and that a certificate issue accordingly."